IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

*UNITED STATES of AMERICA*,

v.                          Case No. 1:18-cr-10375 LTS

*JERMAINE TINDAL*,
        Defendant.

DEFENDANT'S SENTENCING MEMORANDUM

Preliminary

Defendant, Jermaine Tindal, by his attorney, Kevin L. Barron, Esq., respectfully offers this memorandum in aid of his December 12, 2019, 300PM sentencing.  Defendant has been in federal custody since September 20, 2019, almost 15 months at time of sentencing, and seeks a variant sentence of time served instead of the 30 to 37-month GSR cited at PSR ¶78.

SUMMARY OF ARGUMENT

POINT I: Evolving Second Amendment law indicates that persons with predicate non-violent, non-generic felony convictions may not be disqualified from firearms ownership and the, furthermore, Guidelines do not adequately consider the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") new rulings that short-barreled shot guns are not National Firearms Act ("NFA") of 1934 firearms.  Defendant refers the Court to his

November 4, 2019 objections.  Firstly, the statutory predicate

conviction for firearms disqualification under 18 USC §922(g)(1)

is defendant's third offense shoplifting of a $1.88 packet of

condoms, a predicate now questionable under evolving Second

Amendment law.  See, *Binderup*, discussed *infra.* Secondly, the

elevated 20-point base offense level for a felon in possession

of an NFA firearm was not adequately considered by the United

States Sentencing Commission (the "Commission") in view of

certain ATF 2017 letter rulings.  ATF issued a letter ruling to

firearms manufacturers in 2017 that short barrel shotguns,

shotguns nearly identical to the one defendant possessed, are

now classified as pistols under the Gun Control Act of 1968

("GCA") and not as NFA weapons when originally manufactured in

that form.  Ex. A.

POINT II: A Guidelines sentence is Greater than necessary

to achieve the purposes of the Sentencing Reform Act of 1984.

18 USC §§3553(a)(1)&(2).  Mr. Tindal's Criminal History Category

of III is overrepresented with a history of two shoplifting

convictions and one no-physical-contact assault conviction.  The

Guidelines Sentence Range ("GSR") of 30 - 37 months is

disproportionate to the offense conduct in view of ATF's

decision that weapons like the one in this case are not subject

to the NFA.

FACTS

A.   Offense Conduct

This 30 year-old man received a nominal felony conviction at age 24 for third-offense shoplifting of an article worth less than two dollars.   This is the conviction that subjects defendant to prosecution as a felon in possession under 18 USC §922(g)(1) for selling a shotgun to a confidential informant on July 19, 2018.

B.   2017 ATF Letter Ruling to O.F. Mossberg & Sons

A year before defendant's arrest, ATF issued a letter ruling to O.F. Mossberg & Sons, one of the world's largest manufacturers of shotguns, approving for sale to the public as a non-NFA firearm a shotgun with a pistol or "bird's head" grip and a barrel of less than 18 inches.   ATF Letter Ruling to O.F. Mossberg & Sons, dated March 2, 2017, Ex. A.   ATF determined that such a weapon was *not* a sawed off shotgun but a pistol.   *Id.* Consequently, such weapons could be sold to the public as an ordinary handgun under the Gun Control Act of 1968 ("GCA"), thus avoiding the NFA's strict rules for issuance of a $200.00 US Treasury tax stamp that allows an individual to own an NFA firearm.   Such a "stamp" is issued under complex rules for submitting an application, after special background checks and approval of the applicant's chief of local law enforcement.   See, ATF Form 4 with instructions, Ex. B.   ATF's ruling allowed

Mossberg and other major manufacturers like Remington to sell
sawed off shotguns to the public.  Essentially, this ruling
invalidated a long-held understanding that a smooth-bore firearm
with a barrel of less than 18 inches was a sawed off shotgun and
required the purchaser to comply with the complicated, time
consuming and expensive NFA transfer procedure.  See, ATF Form 4
(5320.4).[1]

As described below, before this letter ruling, the
manufacture, transfer or possession of such a weapon was widely
understood to be illegal without first obtaining a tax "stamp"
from ATF on Form 4.

ARGUMENT

POINT I:
GUIDELINES POLICY ARGUMENTS.
THE GUIDELINES DO NOT ADEQUATELY CONSIDER
THE CIRCUMSTANCES OF THIS OFFENSE.

A.   Guidelines Policy Does not Account for Nominal Felony
     Predicates Under §922(g)(1)

Defendant is before the Court as a felon in possession
because of a shoplifting conviction involving a two-dollar item.
There is nothing to indicate that the Guidelines have considered
felon-in-possession predicates that are felonies in name only.
Special interest lobbying by retailers or insurance companies

---

[1] Form 4 still defines a shotgun with a barrel of less than 18
inches as an NFA weapon, definitions section: "The term
"firearm" means: (1) a shotgun having a barrel or barrels of
less than 18 inches in length;. . . ".

for stiffer punishment of minor property crimes should not be
allowed to drive this Court's sentencing determination.  In
fashioning a sentence after *Booker*, a sentencing court "may not
presume that the Guidelines range is reasonable" but instead
must, using the factors set forth in § 3553(a), "make an
individualized assessment based on the facts presented."  *Gall v.
United States*, 128 S.Ct. 586, 596 (2007).  This Court may vary
from GSR on the grounds that Guidelines policy is not applicable
to or was not adequately considered for the circumstances of a
particular case.  *United States v. Kimbrough*, 128 S.Ct. 558
(2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United
States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v.
Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

B.   US Sentencing Commission Did Not Consider Executive Branch
     Position that such Shotguns Are Pistols and
     Are Not NFA Firearms

This Court should not punish Mr. Tindal any more severely
than if he had sold a pistol.  If ATF's letter ruling that a
pump shotgun with a bird's head grip and a 14-inch barrel is
pistol, then there is no material difference between the gun
defendant sold and what Mossberg, Remington and others are
allowed to sell to consumers across the United States.

The Adjusted Offense Level of USSG §2K2.1(a)(4)(B) should
not apply.  The government may argue that the particular weapon
Mr. Tindal possessed would still be subject to NFA rules because

its overall length was 24 inches and not the 26 inches referred to in ATF's 2017 letter ruling. Such an argument, however, fails to apprehend ATF's upending of the NFA regulatory scheme. Prior to the ruling, any firearm with a smooth bore and a barrel of less than 18 inches was considered an NFA weapon. In fact, there have been high-profile cases in recent history, such as *United States v Randy Weaver* where the government has taken harsh action against guns identical to what can now be manufactured and sold to consumers in gun stores across the United States. See, June 10, 1994 Report of the Ruby Ridge Task Force, p.28, 13 inch barrel and bird's head grip. (Weaver's case is commonly known as the "Ruby Ridge" stand off in which government snipers shot and killed Weaver's wife, minor son and dog to effect Weaver's arrest in a prosecution for a 13-inch barreled, bird's head grip shotgun).[2] Remington now sells a semiautomatic shotgun with a bird's head grip and 13-inch barrel through ordinary commercial channels without NFA compliance. Remington advertisement for 13" barreled shotgun, Ex. C.

The government may argue that, even if ATF's letter rulings exempt certain short-barreled shotguns from one definition of an

---

[2]

https://www.justice.gov/sites/default/files/opr/legacy/2006/11/09/rubyreportcover_39.pdf

NFA firearm[3], the shotgun defendant sold was less than 26 inches in overall length and was, therefore, still an NFA firearm under other subsections of the NFA definition.  See, 26 USC §5845(a)(2), this memorandum, footnote 3, *supra.*  The defendant's firearm had an overall length of 24 inches. Although ATF's approved shotguns manufactured by Mossberg and Remington have an overall length of 26 inches, the GCA imposes no limit or requirement of a 26 inch overall length.  The GCA regulates handguns and handguns, generically, are far shorter than two feet long.  The NFA requirement of a 26 inch overall length, therefore, is not relevant if short-barreled shotguns fitted with pistol grips are pistols under the Gun Control Act of 1968.

The overall length of the shotgun is of little consequence to defendant's argument if ATF considers such shotguns to be pistols.  ATF's letter ruling represents a major departure from the view that short-barreled shotguns are a dangerous weapon and

---

[3] The NFA defines the term firearm is at 26 USC §5845: "Firearm. The term "firearm" means: (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon as defined in 26 USC § 5845(e); (6) a machinegun; (7) a muffler or silencer for any firearm whether or not such firearm is included within this definition; and (8) a destructive device."

an evolving view on the dangerousness or unsuitability of
certain classes of weapons.  ATF's evolved view of short-
barreled firearms is not restricted only to shotguns.  ATF now
also permits the manufacture and sale as GCA pistols certain
short-barreled semi automatic rifles with removable magazines
and arm braces (which can be used as a butt stock).  See, March
21, 2017 ATF letter ruling to SB Tactical, ruling that a short-
barreled rifle with an arm brace is a pistol under the GCA and
not an NFA firearm in the form of a short-barreled rifle.  Ex D.
These letter rulings are a significant departure by the
executive branch from the original parameters of Congressional
debate on the NFA and, impliedly, a judgment that sawed off
shotguns (and short-barreled rifles) do not represent the danger
originally perceived.[4]

The NFA's legislative history reveals use of the term
"sawed-off shotgun" to mean shotguns with barrels of less than
18 inches length; it contains no discussion of whether such guns
might be permitted if fitted with a pistol grip.  See, 73rd
Congress, 2nd Session, HR 9096, April 16 & 28 and May 14-16,
1934.  One of the early proposed definitions of "sawed-off
shotgun" was a shotgun having a barrel length of less than 20

---

[4] A shotgun with a 13 or 14-inch barrel will not scatter pellets
indiscriminately over a broad area.  The only likely effect of
the shorter barrel is to reduce the velocity and energy of the
projectiles.

inches.  *Id.* p. 45.  Nowhere, however, in the 177-page record is there any reference to a shotgun with a pistol grip.  In fact, it was Congress's intent to leave pistols out of the NFA all together - and it did.

> MR. FULLER. But eliminating pistols [from the NFA's definition of firearm]?
>
> GENERAL RECKORD. Pistols and revolvers.  Now, if you want to amend the printed bill in the first section by striking out three words, "pistols and revolvers" we will go along with it, even though we do not believe it is necessary.

*Id.* p. 115.

C.   *Binderup*: Second Amendment Law Indicates that Non-violent Non-generic Felonies Should Not Deprive Defendant of Second Amendment Rights.[5]

The government now attempts to subject Mr. Tindal to a sentence under USSG §2K2.1 despite evolving law in US Courts of Appeals that non-generic, non-violent state-law misdemeanors punishable by more than two years of imprisonment may not be used as grounds for prosecution under §922(g)(1) as a matter of Second Amendment law.  *Binderup v. Attorney General of the United States*, 836 F.3d 336 (3d Cir. 2016), cert. denied, 137 S. Ct. 2323 (2017).  The Court should not allow the imposition of such punishment.

Section 922(g)(1) defines a felon in possession as a person convicted of a "crime punishable by imprisonment for a term

---

[5] Most of the text from this argument is lifted from defendant's objections to the PSR.

exceeding one year".  However, 18 USC $921(a)(20)(B) defines

"crime punishable by imprisonment for a term exceeding one year"

as "any State offense classified by the laws of the State as a

misdemeanor and punishable by a term of imprisonment of two

years or less."

The Courts of Appeals, however, have determined that even

this extended "two-year" definition of a one-year disqualifying

conviction is inadequate for Second Amendment purposes.  In

*Binderup*, the Third Circuit held that section 922(g)(1) violates

the Second Amendment as applied to two individuals convicted of

non-violent *misdemeanors* punishable by more than two years of

imprisonment to include OUI, carrying of a loaded firearm

without a permit and a misdemeanor form of "statutory rape" - -

conduct more serious than any of defendant's prior convictions.

See, *Binderup v. Attorney General of the United States*, 836 F.3d

336 (3d Cir. 2016), cert. denied, 137 S. Ct. 2323 (2017).

*Binderup* contains an involved historical discussion of the

roots of the Second Amendment and the government's prerogative

to deny the right to keep and bear arms to "unvirtuous" citizens,

ones convicted of "serious crimes".  Clear from the reasoning of

the Third Circuit's decision is that the designation of a

conviction as a felony was not controlling; the *Binderup* court

rejected the government's and the dissent's view that persons

with felony convictions lacked Second Amendment rights: . . .

"[C]oncluding that all felons and misdemeanants with potential punishments past a certain threshold lack the right to keep and bear arms when, despite their maximum possible punishment, some offenses may be 'so tame and technical as to be insufficient to justify the ban'." *Binderup, supra,* citing *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (denying Second Amendment challenge on the grounds that defendant's prior drug convictions were too "linked to violence" to consider and noting difficulty of administering such fact-specific as applied defense). See, also, *e.g.*, *Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (2009) (North Carolina Supreme Court holding that defendant's conviction on a guilty plea to one count of possession of drugs with intent to distribute insufficient to deprive defendant of right to keep and bear arms under the state constitution).

POINT II:
3553(a) CONSIDERATIONS;
GUIDELINES SENTENCE IS
GREATER THAN NECESSARY

A.   Criminal History Category Over Represents
     Defendant's Minimal Criminal Record

The PSR's calculation at ¶¶42 to 44 of Criminal History Category III greatly over represents defendant's criminal history and constitutes grounds for departure.  "Reliable information indicates that the defendant's criminal history

category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."  USSG §4A1.3(b)(1).

"This policy statement [§4A1.3] recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur."  Application notes to §4A1.3.  For example, a defendant with a murder conviction (three points) would receive a lower score than Mr. Tindal.  By contrast, Mr. Tindal's criminal history score includes very minor offenses: a shoplifting at PSR ¶38 (one point), another shoplifting at PSR ¶39 (two points) and an assault and battery involving pointing a bb gun "towards" the alleged victim PSR ¶41 (one point).  He receives two additional points for being on probation.  PSR ¶43.  Defendant's history indicates that he is not a particular risk of reoffense within the meaning of USSG §4A1.3(c)(2) (a court's written specific grounds for granting the departure).  Two shoplifting convictions and an assault without physical contact do not constitute a dangerous or recidivist criminal history.

Defendant does not have convictions to disqualify him from a CHC departure under the prohibitions and limitations of subsections (b)(2)(A)&(B) involving departures below CHC I, sex

offenders and armed career criminals, career offender and safety
valve.


B.   Enough Punishment

Defendant has been incarcerated since September 20, 2018,
almost fifteen months at the time sentencing, roughly the
equivalent of a 17 month and ten-day sentence (14.75/.85 =
17.35) under the old good-time rules.  A year in prison for
selling a pistol would have been not greater than necessary for
a person of defendant's age with defendant's criminal history.


CONCLUSION

For the reasons set forth above, defendant should be
sentenced to time served.

Dated:  December 5, 2019            Respectfully submitted,
                                    Jermaine Tindal, Defendant,
                                    By his counsel,
                                    s/Kevin L. Barron
                                    Kevin L. Barron, Esq.
                                    50 Congress St. - Ste. 600
                                    Boston, MA 02109-4075
                                    (617) 407-6837


CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this
document to be served today on the attorneys for all the parties
through the CM/ECF system of this District as set forth in the
Notice of Electronic Filing and that no party requires service
by other means.