UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JERMAINE TINDAL | Criminal No. 18-10375-LTS<br><br>*Leave to File Granted 12/6/19* |

**GOVERNMENT'S RESPONSE TO DEFENSE SENTENCING MEMORANDUM**

The United States submits this response to the defendant's Sentencing Memorandum (Dkt. No. 96), to briefly address the defendant's Second Amendment and Title 26 arguments. The defendant does not challenge that the Guideline Sentencing Range of 30 to 37 months was properly calculated under the facts of the case, but rather objects to the application of the GSR to the defendant under the circumstances of this case, and argues for a variance. The Government responds that its recommendation of a 30-month sentence of imprisonment as well as supervised release for three years thereafter is a reasonable and appropriate sentence for the defendant's conduct and relevant conduct in this case, notwithstanding his arguments, and a variance is not justified.

**I.   The Defendant's Conviction Does Not Offend the Second Amendment, and the Second Amendment Does Not Provide Grounds For a Variance**

*Binderup v. AG of United States*, 836 F.3d 336, 339 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 2323 (2017) – the Third Circuit case upon which the defendant relies for his Second Amendment argument – notes that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment on its face, so the only possible challenge is an as-applied challenge. Even if *Binderup* were the law of the First Circuit, the defendant's conviction and the application of USSG § 2K2.1(a)(4)(B) under the

facts of this case would not offend the Second Amendment, as the firearm the defendant possessed and sold was a Title 26 firearm and therefore is not subject to any Second Amendment protections.

The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008), held that at the core of the Second Amendment is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." The Supreme Court noted that this right is not limitless, and expressly acknowledged the exception to the right to bear arms by felons, and noted that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. Restrictions on such firearms are permissible because they fall outside the "historical understanding of the scope of the right." *Id.* Because the particular gun that the defendant possessed, and then sold to a Cooperating Witness, here is one of the weapons that the Supreme Court has held may properly be restricted without offending the Second Amendment, any as-applied challenge by the defendant here would fail.

Similarly, the Second Amendment does not provide any basis for a variance in this case. The defendant characterizes his predicate felony as a "nominal felony" because it is a third-offense shoplifting conviction, and argues that he should not be prohibited from owning firearms on the basis of such a conviction. While the dollar value of the items stolen in the shoplifting is indisputably low, the defendant would not be considered a felon, or made a prohibited person, on the basis of that shoplifting alone – rather, it was the fact that it was a third offense that made the crime a felony, and punishable by up to ten years of imprisonment. The repeated conduct and multiple convictions place the defendant outside the group of "law-abiding, responsible citizens" whose right to bear arms is recognized by *Heller*. *Id.* at 635. Also notably, the defendant was not

"us[ing] arms in defense of hearth and home," *id.*, but rather was selling them to someone he had never even met, bringing his young child to the sale, and attempting to broker other gun deals.

The circumstances of the defendant's conduct in this case, and his criminal history, are not so innocuous that a variance is justified on Second Amendment grounds.

## II. The Defendant's Short-Barreled Shotgun Measuring Less Than 26 Inches Is Classified As A Title 26 Firearm, and USSG § 2K2.1(a)(4)(B) Properly Applies

The firearm that the defendant possessed and sold to the CW was examined by ATF and determined to be a Harrington and Richardson, model 440, 12-gauge shotgun, with an approximate barrel length of 11.5 inches and an overall length 24 inches, with no visible serial number, and it appeared to have been modified from the original manufacturer's configuration. *See* Ex. 1 (ATF report). Accordingly, it qualifies as an NFA "firearm" under 26 U.S.C. § 5845(a).

The defendant argues that because a different arms manufacturer sought and obtained a classification letter from ATF that its different firearm (the Mossberg Model 590) with different specifications (most importantly, an overall length of greater than 26 inches) was determined not to be an NFA firearm, the U.S. Sentencing Commission should treat defendant's firearm as falling outside the NFA too[1], and since it does not, this Court should grant a variance. This argument must fail. The classification letter that the defendant so heavily relies upon states that ATF has previously classified weapons with shotgun-type receivers, that have never had a shoulder stock attached, that are fitted with a "bird's head" grip in lieu of a shoulder stock, with a 14-inch barrel, and with an *overall length exceeding 26 inches*, as falling outside the definition of NFA firearms under Title 26. Dkt. 96-1 at 2. It goes on to assess the newly released (2017) Mossberg Model

---

[1] In his PSR objections, defendant acknowledges that "defendant's weapon is still an NFA 'firearm' under the definition of § 5845(a)(2) because of its overall length of 24 as opposed to 26 inches . . . ." PSR Objection No. 2 (PSR at 28).

590, 12-gauge pump action firearm, which is marked by a serial number, and whose original manufacture specifications include a bird's head grip, a 14-7/16 inch barrel, and an overall length of 26½ inches. It determines that the firearm is not a shotgun, and classifies it as falling outside the definition of NFA firearms under Title 26. *Id.* at 3-4. ATF's Mossberg classification letter includes the following caveat: "We caution that these findings are based on the sample as submitted. If the design, dimensions, configuration, method of operation, or materials used were changed, our determinations would be subject to review." *Id.* at 4.

As demonstrated above, the firearm that Tindal possessed and sold was different in material respects. Most importantly, it was determined by ATF to be a shotgun, and it was measured to have a barrel length of only 11.5 inches and an overall length of 24 inches. Accordingly, it fits squarely within the definition of a Title 26/NFA firearm, as the defendant in his Objections acknowledges.

The overall length is a critical difference because the overall length goes towards concealability. ATF has reasonably found that a weapon with a shotgun's power and destructive capability, that can be concealed on a person (or, in this case, in a stroller), should be subject to greater regulation.[2] Here, Tindal possessed, concealed, and sold such a firearm without being permitted to lawfully possess any firearm. Accordingly, USSG § 2K2.1(a)(4)(B) is properly applied, and a variance is not merited.

## CONCLUSION

As set forth in the government's original Sentencing Memorandum, a sentence of incarceration at the low end of the Guidelines, along with a significant period of supervised

---

[2] Indeed, in the Mossberg classification letter, ATF noted that if the weapon were concealed on a person, its classification decision on even the Mossberg firearm might change. *Id.* at 4.

release, is necessary in this case to reflect the seriousness of the offense of conviction, to promote respect for the law, to adequately punish Tindal for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 30 months imprisonment, to be followed by a three-year term of supervised release, as well as the required special assessment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

> Respectfully submitted,
>
> UNITED STATES OF AMERICA,
>
> By its attorney,
>
> ANDREW E. LELLING
> United States Attorney
>
> */s/ Elianna J. Nuzum*
> Elianna J. Nuzum
> Assistant United States Attorney
> John Joseph Moakley U.S. Courthouse
> One Courthouse Way, Suite 9200
> Boston, MA 02210
> elianna.nuzum@usdoj.gov
> 617.748.3251

Dated: December 10, 2019

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

> */s/ Elianna J. Nuzum*
> Elianna J. Nuzum
> Assistant United States Attorney

Dated: December 10, 2019